May it please the court, I'm Gerald Smith, I represent the defendant appellant Robert Seaman. There are three issues before the court today. First of all, was there reasonable suspicion that would permit the probation officer, the community corrections officer, to conduct a warrantless search? Secondly, assuming that reasonable suspicion did exist, had the authority to conduct that search terminated with Mr. Seaman's arrest? And finally, is this a question that should be certified to the Washington Supreme Court because the Washington courts have been silent on this issue? First of all, with respect to the reasonable suspicion, as pointed out in the brief, there was nothing that would rise to the level of reasonable suspicion. The Supreme Court in May has stated that a parolee, a probationer, has a lowered expectation, a lowered right of privacy, less Fourth Amendment interest, but is not completely eradicated. All we have here is not anything that rises to reasonable suspicion. There is a photo. A photo of him with an ammunition, undated, and an anonymous letter. Why isn't that enough? That's simply rumor. It's innuendo. It's gossip. And we don't even know who the gossipers are. What about the thousand words? Pardon me? The picture. The picture may be worth a thousand words, but if we don't know when that picture was taken, all it can provide is some sort of hunch, some sort of guess. Well, you know, there's a line between probable cause and reasonable suspicion, and it's a little difficult sometimes to know where that line is, but this case is a little bit unusual because we've got the stuff on the Internet and we've got this letter and there were some other previous complaints and calls, apparently. But even those, the record does not establish what those calls were about, what they alleged beyond mere accusations with no support that he had a firearm, that he threatened people, and these purportedly came from law enforcement officers. There are no reports from them that cite time and place. There's no indication of who reported this, whether the law officers themselves observed this, and if they did, why wasn't he arrested at the time? Because that would have been probable cause for an arrest. And I agree that the line between probable cause and reasonable suspicion is very fluid at times. The line between reasonable suspicion and mere hunch or mere guesswork or mere possibility is equally fluid, I believe. It's one reason that I didn't cite a long list of cases, saying here are these cases that didn't find reasonable suspicion, because it becomes kind of like the Sesame Street game of which of these things are not like the other, and it is a question of what's reasonable. But here, your client's released in 2005, and he puts up a MySpace page sometime between that and 2006 that shows him with a... No, Your Honor, that was not his MySpace page. We don't know when that MySpace page was put up, we don't know when the photo was put up, and we don't know when the photo was taken. But to a reasonable person, one would think it occurred sometime after 19... or 2005, between 2005 and 2006. I mean, MySpace hasn't been out that long. There's no basis to do that. If we look on MySpace today, we can see photos on there that could have been taken yesterday, they could have been taken a year ago, they could have been taken ten years ago. We simply have no way of determining, there's no reasonable basis to say. I think that's a probable cause. This doesn't raise the level of probable cause, but I think if I were a probation officer and I saw the person I had under supervision with a MySpace page, even though it's not his, with a gun, I'd say, well, I'd better look into this. That's not too unreasonable, is it? In fact, it would be kind of delinquent not to look into it. Perhaps that may be true. It may have given some cause to do something, but something short of an unwarranted search into the home. Perhaps even asking the probationer, hey, looks like you have a gun here. Or, you know, something short of a search. I think, you know, I've made the arguments in the brief. I've summarized them here. The clock is ticking, and I think that while this may be of some interest and that I'm not sure I can say anything more than I've already said, I'd like to move to the second issue, which is when did the authority to conduct the search terminate, assuming that there was reasonable suspicion? The issue is, did it terminate when Mr. Seaman was arrested? The community correction officer stated on the witness stand that if a person is incarcerated, and there's some discussion about whether or not I quoted the record correctly, but certainly indicated that if a person was incarcerated, she no longer had authority to conduct the warrantless search. And she was trained. That was part of her training. That was her instruction. This isn't something that she just made up. She asked him to come to the office. Yes. And she had all of these concerns, so she handcuffs him and says, come along to the search. She placed him under arrest. Pardon? She placed him under arrest at that time. Okay. But she takes him to the search so he can be there when it takes place. When the individual is in jail, they can't come along and watch the search. The record, Your Honor, indicates that it wasn't because she was concerned for his right to be there or so that he could be there. It was for her convenience. It was their convenience that they didn't take him to jail first. But even if you assume that her statement about it ends with incarceration is the correct statement of the law and you cite no authority to support that, he was not incarcerated. He was not in jail, right? He was not in jail. But if the authority ends with incarceration, we can't, I believe, make that fine a point. He was within the same. Well, that's why I doubt whether that's a correct statement of the law. You don't cite any authority for that, do you? There is no authority. He is treated as an admission of law, so to speak. You don't cite a case to support that proposition. And that's why, Your Honor, we get into the certifying to the Washington Supreme Court because the fact is, although this is a matter of a person under community supervision with a lowered expectation, that is a function of state law. It's under state law that he had that lower expectation. There is no state law that tells us when that authority, which is granted by the state, ends. The only thing we have is the statement of the community corrections officer who said that that was part of her training. So the only authority that we have is from the community corrections department who apparently operate under the belief that comes from somewhere that the authority ends with the arrest. She didn't say arrest. When a person is arrested, and Mr. Seaman at the time was under the... No, but it's very, it's common, you know, for people to be arrested and then to be searched and the person to be searched, right? Yes. I mean, because you arrest somebody, I mean, you know, under all normal circumstances, doesn't end, you know, the police officer's authority to search. Because we didn't have a police officer here and... Or anybody who was authorized to conduct the search. It does not end, you know, when you place the person. In fact, that may be cause, you know, to conduct it for the search. That's part of the same, you know, the same cause that authorizes the arrest is really the same cause that authorizes the search, isn't it? Why should it end? Because, and before I get to that point, I think there's an important distinction to be made that the cases I cited in the brief talk about the differences between what a police officer can do. A police officer who the case... I know, a police officer needs probable cause. But at the point of arrest, assuming there's probable cause for an arrest with a police officer... But a parole officer doesn't need probable cause. And that's the point I'm making, that there is a distinction. Needs lesser cause. Needs lesser cause to search. And that's why, once the arrest is made, that authority ends. And the fact that he's not incarcerated... I don't understand the reasoning, though. What's the rationale? Why should it end? Because of the role of the community corrections officer as distinguished from the law officer who is doing an arrest, who's doing an adversarial, they talk about, an adversarial investigation as opposed to the probation officer, community correction officer, who is, in theory, as much on the side of the probationer as on the law enforcement. No, but her job is to supervise the parolee. And then part of that supervision is the obligation, if there's a violation of parole, to bring it to a hearing, just like a police officer has the obligation. If you arrest somebody on probable cause, you take it to the district attorney. But so I don't understand why the authority to investigate and see whether her arrest was in connection with arrest. I mean, why the authority to search should end any more than it should end with the police officer? Because the parole officer has to support the arrest at the revocation hearing, right? That's correct. Well, just like a police officer has to support the arrest before the DA or before the court. I don't understand the difference. Well, Your Honor, if the police officer arrests somebody outside of their home, or even if they're in their home, that does not give current blocks to search the home, even with probable cause. There's still the warrant requirement. They can search the person incident to arrest. Well, it depends on what the reasonable, you know, what the cause is for the arrest is. If you have probable cause, if a police officer is going to arrest somebody, you know, in the home because you have probable cause that the person is dealing in drugs, I think they have probable cause. Doesn't that justify a search? Not by itself, not without a warrant. I don't know. I've seen a lot of cases where that's happened. Go ahead. I see my time is up. We'll give you a couple minutes for rebuttal. Thank you. Thank you, counsel. We'll hear from the government. Good morning, Your Honors. My name is Ani Ahmed. I'm an assistant United States attorney out of Spokane. I represent the United States in this case. May it please the court. Your Honor, as to the first issue, the district court correctly found that there was a well-founded suspicion by the probation officer to conduct the search, and there were seven points of evidence not only referred to by the probation officer during her direct and cross-examination at the suppression hearing, but also in the court's decision. There was the photograph that Your Honor was talking about a moment ago, although it was not dated. It was procured back in December of 2006. That's true, but under cross-examination, the officer said she didn't dispute that it was taken in 2001. She had no basis one way or the other. She did not know when it was taken. I believe she was asked, it could have been taken at any time, and she acknowledged it could have been taken at any time. But I think the district court correctly found that she was the one. The question was posed. Do you have any reason to dispute that the photograph was taken in 2001 prior to his felony conviction? Answer, I have no idea when the photograph was taken. Correct. She did not know when the photograph was taken. But I think the district court correctly found, in combination with the other pieces of evidence that she had prior to this search, that she legitimately relied on that photograph. Not only was there a photograph of him holding the 9mm, but there was also a photograph of him with Bud Brown, an individual she was familiar with, that she knew that he associated with, holding gang signals all along. But she didn't identify what those gang signals were. Well, she did identify them. She said there were gang signals, and then he said, looks like the number 3. What kind of signal is it? And she said, I don't know, right? Right. She believed it was a gang signal based on what Bud Brown was holding at that time, which she identified as an Eastside signal, which was a gang. And he asked her, was she familiar with what the number 3 represented? And she said, it seems to me it was a gang signal, but I don't know. And she acknowledged, I don't know what specifically it means. She also received citizen reports, and the phrase she used was repeatedly. And it was going back to August 2006, where he actually had pulled a gun on another convicted felon. She went to talk to him about this allegation, and she repeated to him the fact that he could not possess firearms or any ammunition at that point. During this process, she was getting reports from other law enforcement officers, specifically Officer Miller, that he had been threatening individuals in the community, that he had firearms. There was another conversation with another police officer that he had been at the residence of a known felon. Now, granted, and I said this in my brief, that they did not sustain that at his revocation hearing because the officer could not testify that, in fact, he saw the convicted felon at the residence. But he was at that residence. And finally, there was the anonymous letter on January 17th, and that is what spurred the probation officer to go ahead and staff the request to conduct the search. But they didn't find any meth, right? No. They didn't find any guns? They did not find any guns, Your Honor. They didn't find any 9mm ammunition, right? No, they found three different types of ammunition, Your Honor. One of the rounds of ammunition was found right next to his shoe. Well, I understand they found ammunition, but not 9mm, right? No, they did not, Your Honor. They found .45 caliber, .25 caliber, and I believe .22 caliber, to my recollection. Some of it was in proximity to his person. It wasn't in storage, right? No, they found it in a laundry room, Your Honor, the .45 caliber. Then the .25 caliber, I believe, was found next to his shoe, and the .22 caliber was found in the vehicle. Based on the totality of the evidence that the district court found, the totality of circumstances and all of what she relied on,  she had a well-founded suspicion to conduct a search at that time. I know this really isn't quite part of the appeal, but 40 months was imposed? Yes, Your Honor. In fact, it seems pretty high. What justified that? Well, Your Honor, actually his guideline level was 53 months, and it was his criminal history that justified the 53 months. I think it was 53 to 61 months, and the court actually gave him 40 months because the court reasoned, because he was getting his life straight at that point, that it actually justified a downward departure. So 40 months was less. I would note that one of the reasons that the judge did cite it as 40 months was Bud Brown's case was actually referred to the state level because of some evidentiary problems, and that's the time period Bud Brown got. I think the judge wanted to equate the sentences with Bud Brown as to the defendant, but it was lower than the guideline range. Your Honor, as to the extinguishment as far as her ability or authority to conduct a search once the defendant is arrested, I think the district court took a rational approach to whether, in fact, that authority is extinguished. It would be nonsensical otherwise. In fact, she could have arrested him for security reasons, safety reasons, flight reasons, and I don't think she correctly, and I see nothing in the record to justify her statement as to, well, I don't think that I would be allowed to search, and I'm paraphrasing here, if, in fact, he wasn't incarcerated. I think my authority ends at that point. Well, you know, it seems to me she was just thinking, well, obviously, once the guy's in jail, I mean, there's no need for a search, right? In fact, Your Honor, if you look at the exchange on the Supplementary Excerpt of Record, page 119, that's exactly what she's doing. She's making a reasonable basis as to when her authority would end in response to the question by defense counsel, well, you wouldn't search once he's in jail. And she says, again, I'm paraphrasing, but it's on page 119. She says, well, no, I wouldn't search once he's incarcerated. But I would submit to the court that, in fact, until a judicial officer revokes his probationary status or his supervised release status, he's still on supervised release. For example, he's placed in jail, and the probation officer learns today, in fact, that he violated the conditions of his supervised release two weeks ago, but she's only gotten that well-founded suspicion today. Would she be authorized to conduct that search? Well, in fact, if he was still on supervised release, she would be authorized to conduct that search, and there's no case law that would extinguish that right. In fact, she would have a well-founded suspicion if, in fact, she received that evidence today. And in this case, it was adding up ever since August of 2006. Lastly, Your Honor, I would note that the district court certainly has discretion, and I've cited several cases, the Schein case and the Louis case in the United States brief, indicating that, in fact, it's within the sound discretion of the district court to certify question, even if there is doubt as to local law. And it's not an obligation by the district court to actually certify that question. And I think the district court reasonably correctly found that, in fact, this issue could be decided by the Ninth Circuit. There's no reason to go to the Washington Supreme Court when, in fact, there's no dispute as to any state law matters because there's no precedent as to whether, in fact, it would extinguish the probation officer's right to conduct the search once the individual is arrested. The judge has simply found, take it to the Ninth Circuit. You can certainly argue that issue, and that's what the defense counsel has done, or excuse me, the appellant has done in this case, is argue that question to the Ninth Circuit. And so it was reasonable for the district court to deny the certification at that point. Let me just ask you, back in a little bit, just a general question. You know, the state law, state statute says the officer, the probation officer has to have reasonable suspicion, right, before making a search? Well-founded suspicion, yes, reasonable suspicion. Whatever the words of the statute, I assume it sort of intends to reflect, like, just general case law, right? I mean, the same understanding of the term? Do you agree with that? Yes, Your Honor. Right now. What do you think? You know, it's something, also it's something obviously lower than probable cause, right? Now, tell me, you know, just in a sense or two, what do you think that standard is? I mean, what do you have to show? You know, some cases say, well, hunch is not good enough, right? But what is good enough, just as a general standard? What would you say? I think the case law establishes, really, it's a case-by-case analysis based on the totality of the circumstances, and you're right, Your Honor, it's less than probable cause, but, in fact, she has to have something well-founded, something to articulate the fact that she has some sort of suspicion, which is legitimately based on evidence that she's aware of, that, in fact, this individual is violating the terms of his probation, in this case, possessing firearms or ammunition and so on. So she must be able to articulate that well-founded suspicion based on the totality of what she knows, and I think she was able to do that to the district court here based on the seven pieces of evidence that she outlined for the court. I was going to ask this to Mr. Smith, and I will ask this to Mr. Smith when he gets back up, but of what import is the consent-to-search provision? It's a none, Your Honor. As the district court quickly found, there's no reason, and I know it was brought up at the suppression hearing, but in the court's decision, the court noted that, in fact, he didn't have to give consent. He was on probation. No, you're right. No, I mean, but the consent clause actually says, I'm aware I'm subject to search and seizure of my person, residence, automobile, et cetera, if there is reasonable cause on the part of the Department of Corrections to believe I violated the terms and conditions or instructions, et cetera. I mean, it uses a different ‑‑ it is restrictive in one sense, but it uses the phrase reasonable cause, which is somewhat different from reasonable suspicion or probable cause. In fact, Your Honor, Ms. Sanchez, during her testimony, testified twice as to well-founded suspicion, reasonable suspicion, and reasonable cause to believe, reasonable cause to believe being probable cause. And I think she was basing it on that statement itself, but the case law establishes that a probation officer, and you're right, it is more restrictive if you look at that definition, and they review that document with a probation, in this case, with Mr. Seaman prior to, just so he's aware that we're going to come in there and conduct searches. But the record established that I believe she had just conducted one prior unannounced search prior to the one conducted on January 23rd where he was arrested. But she did state that in her testimony, reasonable cause to believe on one occurrence, and that would be the wrong standard. Okay. Thank you. Any further questions? Thank you for your argument. Thank you, Your Honor. I'll give you a couple of minutes. First of all, if I can correct something that I think I said originally when I said we didn't know whose website it was, it was Bud Brown's website. It was Bud Brown's website. Fewer of your friends have MySpace pages, if you have information. Yes. But that doesn't change the fact that we still don't know when the photo was taken. Also, just very briefly, because I'm way over time, the photo of Mr. Seaman with the gun and Mr. Seaman with Bud Brown is the same photo. There were not two separate photos showing that. Also, the probation officer went further than saying that it was her belief that she wouldn't be allowed to search. It was part of her training. She was trained that they could not search once someone was incarcerated. And the point that I want to make on that is that when someone's arrested, it doesn't matter if they're confined in an eight-by-eight cell or they are being led about by a probation officer or a law officer, they are still under confinement. They're still told where they can go and where they can't go and what they can do and what they can't do. And I think that it's simply a specious argument to say there's a difference between being arrested and being incarcerated because for the purposes that arise when we're looking at the effect of being incarcerated or being arrested, it's the same effect whether the person has been physically deposited in the jail or is simply sitting in a police car or anywhere else handcuffed. As I said, my time is way over, and I don't know if there are further questions. Are there questions? Thank you both for your arguments. The case has been submitted, and we'll proceed to the last case on this morning's oral argument calendar, which is United States v. Quinn.
judges: Fletcher B. , Tashima, Thomas